IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JUSTIN NOVICK, on behalf of himself, Individually, and on behalf of all other Persons similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>SHIPCOM WIRELESS, INC.<br><br>*Defendant*. | §<br>§<br>§<br>§<br>§<br>§<br>§   CIVIL ACTION NO. 16-CV-1020<br>§<br>§<br>§<br>§<br>§ |

# **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,

Dated: December 15, 2017      SUD LAW P.C.


                                                  */s/ Nitin Sud*
                                                  Nitin Sud
                                                  State Bar No. 24051399
                                                  Federal ID No. 611307
                                                  6750 West Loop South
                                                  Suite 920
                                                  Bellaire, Texas 77401
                                                  Phone: 832-623-6420
                                                  Fax: 832-304-2552
                                                  nsud@sudemploymentlaw.com

                                                  Attorney for Defendant, Shipcom Wireless, Inc.

i

CERTIFICATE OF SERVICE

I certify that Defendant's Motion for Summary Judgment was served on the following attorney via the court's electronic filing system on December 15, 2017:

>Mark G. Lazarz
>Daryl J. Sinkule
>SHELLIST LAZARZ SLOBIN LLP
>11 Greenway Plaza
>Suite 1515
>Houston, Texas 77046
>Phone: 713-621-2277
>Fax: 713-621-0993
>mlazarz@eeoc.net
>dsinkule@eeoc.net

>*/s/ Nitin Sud*
>Nitin Sud

## TABLE OF CONTENTS

| | |
|---|---|
| **TABLE OF EXHIBITS** ……………………………………………………………...…… | iv |
| **NATURE AND STAGE OF THE PROCEEDINGS** ……………………………………………… | 1 |
| **ISSUES TO BE RULED UPON BY THE COURT** ………………………………………………… | 1 |
| **STANDARD** ………………………………………………………………………………… | 1 |
| **STATEMENT OF UNDISPUTED MATERIAL FACTS** ……...……………………………..……… | 2 |
|     A. Background …………………………………………………………………… | 2 |
|     B. Justin Novick ………………………………………………………………… | 3 |
|     C. Novick raises a COBRA notice concern for the first time seven months after his employment ended and via his attorney ………………………….. | 3 |
|     D. Shipcom communicates with UHC to investigate Novick's concerns ………….. | 4 |
|     E. Shipcom takes immediate action to rectify the situation caused by UHC's failure ……………………………………………………………………. | 4 |
| **ARGUMENTS AND AUTHORITIES** ……………………………………………………………. | 5 |
|     A. Standard for Assessing Liability and Damages ………………………………….. | 5 |
|     B. Application to Novick ……………………………………………………………… | 7 |
| **CONCLUSION AND PRAYER** …………………………………………………………………. | 8 |

# TABLE OF EXHIBITS

| EXHIBIT # | DESCRIPTION OF EXHIBIT |
|:---:|:---:|
| 1 | March 2013 United Healthcare enrollment form |
| 2 | Aetna COBRA administration form |
| 3 | Novick resignation information and pay records |
| 4 | Novick's LinkedIn profile |
| 5 | October 21, 2015 letter from Novick's attorney |
| 6 | October 26, 2015 letter from Novick's attorney |
| 7 | October 28-29, 2015 emails with UHC |
| 8 | January 1 – March 31, 2015 UHC COBRA notices |
| 9 | Early-November 2015 emails between Shipcom and Aetna |
| 10 | Mid-November to December 1, 2015 emails between Shipcom and Aetna |
| 11 | December 4, 2015 emails between Shipcom and Aetna |
| 12 | COBRA notice sent to Novick by Aetna |
| 13 | November 25, 2015 letter from Shipcom's attorney to Novick's attorney |
| 14 | Novick's Interrogatory Answers |
| 15 | Novick's responses to Request for Production of Documents |
| 16 | Affidavit of Rashida Malbari |
| 17 | Affidavit of Nakul Goenka |
| 18 | Unpublished cases, in chronological order by date |

Defendant Shipcom Wireless, Inc. ("Defendant" or "Shipcom") files this Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure and respectfully shows the Court as follows:

### NATURE AND STAGE OF THE PROCEEDINGS

On April 15, 2016, Plaintiff Justin Novick ("Plaintiff" or "Novick") filed this ERISA lawsuit alleging COBRA notice violations, as a proposed class action. *Docket #1*. Shipcom filed a Rule 12(b)(6) motion to dismiss on June 6, 2016. *Docket #10*. The Court denied that motion on January 24, 2017. *Docket #19*. A scheduling order was issued on February 17, 2017. *Docket #21*. The scheduling order bifurcated discovery, with a final discovery deadline of November 15, 2017.

Novick did not propound any discovery requests upon Shipcom, did not submit any disclosures, and did not make an attempt to seek class certification. Therefore, this case has been proceeding as a single-plaintiff case, involving only Novick.

### ISSUES TO BE RULED UPON BY THE COURT

Whether summary judgment should be granted in Shipcom's favor, dismissing Novick's claims with prejudice.

### STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 – 23 (1986). "[T]he mere existence of *some* factual dispute will not defeat a motion for summary judgment; Rule 56 requires that the fact dispute be *genuine* and *material*. *Willis v. Roche Biomed. Labs.*, 61 F.3d 313, 315 (5th Cir. 1995). The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact, but it need not negate the elements of the nonmoving party's case. *Id*. Once the moving party has met its burden, the nonmoving party must come forward with specific evidence in order to raise

a genuine issue of material fact. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). The court must draw all reasonable inference in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

STATEMENT OF UNDISPUTED MATERIAL FACTS

A. Background

Shipcom was founded in 1997 and provides supply chain software solutions.[1] Throughout most of its history, Shipcom has been a very small employer with less than 20 employees. *Ex. #16, ¶3*. In early 2013, Shipcom engaged in communications with United Healthcare ("UHC") to become its insurance provider and administrator. *Id., ¶4*. Accordingly, on March 1, 2013, Shipcom submitted an application to UHC, indicating that for 2012 it had an average of 18 employees, and that as of March 1, 2013 it had 22 employees eligible for benefits. *Id.*; *Ex. #1*. As indicated in this document, Shipcom understood UHC was to administer its state continuation notices, or COBRA notices when it became eligible. *Ex. #16, ¶4*. In September 2013, Shipcom was awarded a federal contract by the Department of Veteran Affairs (VA) to manage and track the VA's supply chain and inventory of medical surgical equipment's at the point of use (for over 150 hospitals nationwide).[2] In order to deliver its supply chain solution to the VA, Shipcom hired and provided new jobs to several people in 2014 and 2015 who were exclusively staffed on this large VA project, including Novick. *Id., ¶5*.

From April 2013 through March 31, 2015, Shipcom believed that UHC was sending out any required state termination and COBRA notices. *Ex. #17, ¶3*. Effective April 1, 2015, Shipcom changed its insurance provider to Aetna, which became its COBRA administrator in approximately

---

[1] *See www.shipcomwireless.com.*

[2] http://www.nextgov.com/cio-briefing/2013/09/va-awards-275-million-contract-track-supplies-hospitals/70774/

July or August 2015 and provided COBRA notices to eligible individuals, some of whom have opted for COBRA coverage. *Id.*; *Ex. #2*.

B. Justin Novick

Novick was hired on or about May 15, 2014 as a trainer, and he voluntarily resigned effective March 13, 2015. *Ex. #16, ¶6*; *Ex. #3*. According to Novick's LinkedIn profile (*Ex. #4*), Novick voluntarily resigned in order to start a job as a Trainer and Development Specialist with Cognizant Technology Solutions Corporation ("Cognizant"). Cognizant is a multinational corporation with over 230,000 employees[3] and revenues of $12.42 billion as of 2015,[4] a considerably larger organization than Shipcom both in terms of number of employees and revenues. At no time during Novick's employment with Shipcom or shortly thereafter did he ever raise any questions/concerns about his potential COBRA notification rights nor any concerns about possible lack of health insurance coverage (*Ex. #16, ¶7*), and there is no such allegation in his Original Complaint.

C. Novick raises a COBRA notice concern for the first time seven months after his employment ended and via his attorney

Because Novick ended his employment on March 13, 2015 (while UHC was still Shipcom's benefits provider and before Shipcom switched to Aetna), Shipcom expected that UHC would have sent out a COBRA notice to him just like UHC did to other employees who had resigned in March 2015. *Ex. #17, ¶4; also see Ex. #1*. However, on October 21, 2015, for the first time ever and after Shipcom switched to Aetna and made it its COBRA administrator, Novick raised concerns through his attorney about not receiving a COBRA notice after his voluntary resignation. *Ex. #5*. Novick's

---

[3] https://www.cognizant.com/company-overview

[4] http://news.cognizant.com/2016-02-08-Cognizant-Reports-Fourth-Quarter-And-Full-Year-2015-Results

attorney followed-up five days later, indicating Shipcom could be liable for a large amount of money based on Novick not receiving a COBRA notice since his voluntary resignation.[5]  *Ex. #6*.

    D. <u>Shipcom communicates with UHC to investigate Novick's concerns</u>

Shipcom immediately investigated this concern with UHC, which confirmed that it should have been sending out notices for the first quarter of 2015.  *Ex. #17, ¶5; Ex. #7*.  UHC confirmed that it had only sent out COBRA notices to six individuals who had resigned or been terminated between January 1, 2015 and March 31, 2015, and it is unclear as to why it did not send out a notice to Novick, as he had resigned effective March 13, 2015.  *Ex. #17, ¶6; Ex. #8*.  Regardless, there were/are former employees who had/have health coverage via COBRA whose employment ended during the January to March 2015 time-frame, and who apparently did receive notification from UHC. *Id*.

    E. <u>Shipcom takes immediate action to rectify the situation caused by UHC's failure</u>

Because Shipcom had switched insurance providers to Aetna effective April 1, 2015, the company immediately worked with Aetna to make sure a COBRA notice was sent to Novick (and any others) who may have not received such a notice, offering to extend the enrollment period to retroactively provide COBRA coverage if so desired. *Ex. #17, ¶7; Ex. #9, #10, and #11*.  As shown in these communications, included with the COBRA notice, Shipcom sent a letter offering to provide in good faith: a) a payment schedule so potential COBRA participants would not have a need for a large lump-sum payment of past premiums; and b) reimbursement for any incurred out-of-pocket medical expenses during the time period any such former employee could have been covered under COBRA.  Attached as *Exhibit #12* is a copy of the COBRA notice sent to Novick specifically and the letter from Shipcom offering additional benefits due to UHC's failure to send the notice.  This notice and letter was sent by Aetna to Novick on December 3, 2015. *Ex. #17, ¶7-8; Ex. #11 and #12*.

---

[5] Novick's attorney raised other issues unrelated to Novick or his claims in this case.  Accordingly, such items are redacted from Exhibit Nos. 5, 6, and 13.

In addition, on November 25, 2015, Shipcom's outside attorney responded to Novick's attorney, indicating that Shipcom would consider offering Novick, in part, retroactive reinstatement into COBRA and reimbursement of medical expenses incurred due to any loss in coverage. *Ex. #13*. Neither Novick nor his attorney indicated that Novick had any interest in electing COBRA or obtaining reimbursement for any incurred medical expenses. Shipcom was not provided with any further information regarding Novick, and he has still never elected COBRA. Instead, Novick filed an FLSA overtime lawsuit against Shipcom on March 18, 2016 (*Novick et al. v. Shipcom Wireless, Inc.*, case no. 16-cv-730, in the Southern District of Texas, Houston Division), and then this ERISA lawsuit on April 15, 2016.

Novick never identified any doctors, dentists, ophthalmologists, psychologists, psychiatrists, or any other healthcare providers that he may have seen between May 2014 and November 2016. *Ex. #14*. Novick also never provided any documents in response to Shipcom's document request, seeking information relating to his healthcare, subsequent employment, and subsequent insurance. *Ex. #15*. Novick's failure to provide any evidence in support of his claims confirms that he suffered no harm and had no need for COBRA benefits.

### ARGUMENTS AND AUTHORITIES

Novick has two claims pending: a) violation of ERISA § 606(a)(1), 29 U.S.C. § 1166(a)(1), for Shipcom's alleged failure to provide COBRA notice rights upon Novick's commencement of coverage under the plan; and b) violation of ERISA § 606(a)(2) and (4), 29 U.S.C. §1166(a)(2) and (4), for Shipcom's alleged failure to provide COBRA notice rights upon termination of Novick's employment.

A. <u>Standard for assessing liability and damages</u>

"In the Fifth Circuit, 'the law requires only that the employer make a good faith attempt to comply with COBRA's notification provision.'" *Sonnichsen v. Aries Marine Corp.*, 673 F. Supp. 2d

5

466, 472 (W.D. La. 2009) (citing *Degruise v. Sprint Corp.*, 279 F.3d 333, 337 (5th Cir. 2002)). The employer does not need to ensure actual delivery of a COBRA notice. *See Degruise*, 279 F.3d at 337. "The purpose of the [COBRA notice] statutory penalty is to provide plan administrators with an incentive to comply with the requirements of ERISA" and to "put plaintiffs in the same position they would have been in but for the violation." *Starr v. Metro Sys., Inc.*, 461 F.3d 1036, 1040 (8th Cir. 2006) and *Cole v. Trinity Health Corp.*, No. C12-3075-MWB, 2014 U.S. Dist. LEXIS 7047, *19-20 (N.D. Iowa Jan. 21, 2014) *Ex. #18*.

A court has discretion to impose a penalty for a COBRA notice violation. *See* 29 U.S.C. § 1132(c)(1). "The penalty provision serves as an incentive to plan administrators to meet requests for information in a timely fashion." *Miles-Hickman v. David Powers Homes Inc.*, 589 F. Supp. 2d 849, 880 (S.D. Tex. 2008). In exercising discretion to impose a penalty, courts within the Fifth Circuit focus on two factors: 1) the presence or absence of good faith on the employer's part, and 2) prejudice to a plaintiff caused by an administrator's failure. *See id.*; *Sonnichsen*, 673 F. Supp. 2d at 472-73; *Slipchenko v. Brunel Energy, Inc.*, C.A. No. H-11-1465, 2013 U.S. Dist. LEXIS 124159, *53 (S.D. Tex. Aug. 30, 2013). *Ex. #18*.

Accordingly, courts have found that even though employers may have technically violated the COBRA notice provision, plaintiffs may still not recover damages, penalties, or attorney's fees. *See, e.g., Sonnichsen*, 673 F. Supp. 2d at 473 (finding the plaintiff suffered no prejudice where he chose not to elect COBRA coverage and did not "contend that he would have purchased coverage had he been properly notified under COBRA"); *Miles-Hickman*, 589 F. Supp. 2d at 880-81 (finding the plaintiff was not entitled to any penalty/damages where his first contact to the defendant for COBRA information was through an attorney, his incurred medical expenses would have exceeded his COBRA premiums, and/or there was no evidence that he would have even elected COBRA coverage had he obtained a timely notice); *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 589-90 (7th Cir.

2011) (affirming district court's decision to not impose penalties or award attorney's fees where the plaintiffs were not "significantly prejudiced by the delay in notification," there was "no indication of bad faith or gross negligence," and the defendant "offered to provide retroactive coverage through a payment plan"). In *Miles-Hickman*, Judge Nancy Atlas specifically stated that she "recognizes that the purpose of the ERISA civil enforcement provisions is to put plaintiffs in the same position they would have been absent the violations" but the plaintiff "made conscious and possibly strategic decisions not to seek coverage… at a time when the problem easily could have been addressed." *Id*. at 881.

B. <u>Application to Novick</u>

As an initial matter, there is no admissible evidence that Novick never received a COBRA notice upon the commencement of his coverage when he began employment. Such evidence would be essential for the § 1166(a)(1) claim. There is also no evidence that Novick suffered prejudice or harm due to any such alleged COBRA notice violation. There is no evidence that, upon being hired at Shipcom and initiating coverage under the applicable health plans, Novick ever asked about his COBRA options after his employment would end, that any alleged lack of notice somehow adversely impacted him, or that Shipcom prevented Novick from obtaining such information.

In March 2015, Novick voluntarily resigned to take another job with a larger company, and it is likely his new employer provided health benefits that were presumably more beneficial than what was offered by a small company like Shipcom.[6] Novick failed to provide any medical information or documents to suggest he actually needed any COBRA coverage after his employment with Shipcom ended. *See Ex. #14 and #15*. Even when contacted by his attorney in late October 2015, there was

---

[6] In fact, because Novick's employment with Cognizant apparently began in March 2015 (*See Ex. #4*), while he was still covered under Shipcom's benefits (through March 31, 2015), there was likely no gap in his insurance coverage. Furthermore, because Novick's employment with Cognizant apparently ended in October 2015 (*See Ex. #4*), it is likely that he would have received a COBRA notice from Cognizant and/or its plan administrator.

still no suggestion that Novick suffered due to any alleged COBRA notice violation. Most tellingly, despite two separate proposals from Shipcom (one via Aetna and another via Shipcom's attorney) to retroactively provide COBRA coverage, enter into a payment plan to avoid a lump sum payment, and reimburse incurred medical expenses if uninsured, Novick chose to ignore Shipcom's proposals and instead file this lawsuit about five months later. Again, there is no evidence that Novick suffered any harm or prejudice.

Similarly, all the evidence shows that Shipcom acted in good faith. It relied on UHC to send COBRA notices, and then took immediate action when it was informed that Novick allegedly did not receive a notice. Novick rejected or ignored Shipcom's attempts, and he has produced no evidence in this case. Novick should not have filed this lawsuit.

## CONCLUSION AND PRAYER

For the foregoing reasons, Shipcom respectfully requests that the Court grant its motion for summary judgment and accordingly dismiss Novick's lawsuit with prejudice. Shipcom also requests any additional relief to which it may be entitled.