United States District Court
Southern District of Texas
**ENTERED**
May 31, 2018
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JUSTIN NOVICK, §
§
      Plaintiff, §
§
v. §    CIVIL ACTION NO. H-16-1020
§
SHIPCOM WIRELESS, INC., §
§
      Defendant. §

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case came on for a one-day trial to the Court on May 9, 2018. All parties rested and closed the evidence, and having heard and considered the arguments and authorities of counsel, the Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52.

## Findings of Fact

From a preponderance of the evidence, the Court finds as follows:

1. Defendant Shipcom Wireless, Inc. ("Shipcom") was a very small software development company that grew from an average of 18 employees in 2012 to about two dozen employees in early 2013. Then, in September 2013, Shipcom obtained a contract from the United States Department of Veterans Affairs to reimagine the software used to track and optimize the supply chain for all

medical and surgical equipment purchased for use in approximately 152 VA hospitals and about 600 clinics throughout the country.

2.    To perform this massive VA contract, Shipcom in February 2014 began hiring new personnel at an extraordinary pace until by July 2015 it reached a peak level of between 220 and 250 employees.

3.    It was in the midst of this exponential employment growth that Plaintiff Justin Novick, then a resident of Los Angeles, California, was hired by Shipcom on May 15, 2014.

4.    As an employee of Shipcom, Plaintiff became a participant in and a qualified beneficiary of Shipcom's Group Health Insurance Plan ("Plan").  UnitedHealthcare was Shipcom's health insurance provider and its COBRA administrator during the time that Plaintiff was a Shipcom employee.  Plaintiff did not receive from Shipcom or UnitedHealthcare a formal ERISA § 606(a)(1) initial written notice of COBRA continuation coverage when he was employed but he knew that his Shipcom-furnished group health, dental, and vision insurance was administered by UnitedHealthcare throughout Plaintiff's employment.

5.    Plaintiff had trained at City College in Chicago to qualify as a paramedic.  Shipcom, however, hired him to be a trainer in the installation of its new software in VA facilities.

6.    Although Plaintiff lived in Los Angeles, his job for Shipcom required him to travel to VA sites in Pennsylvania, North Carolina, and other states where Shipcom's product was to be used.

2

After ten months, and stressed by the demands of the job, he resigned from Shipcom effective March 13, 2015.

7.    Plaintiff's Shipcom health benefits insurance coverage continued through March 31, 2015, the month in which he resigned from Shipcom effective March 13, 2015.  Before the month ended he had accepted new employment with Cognizant Technology Solutions as a training and curriculum developer.  Cognizant provided to Plaintiff health, dental, and vision insurance with the commencement of his new employment.

8.    While he was employed by Shipcom, Plaintiff not only knew that his compensation package included health insurance benefits administered by UnitedHealthcare, but he also knew about COBRA from prior experience and was acquainted with COBRA notices.  While employed for Shipcom and for more than a half-year after resigning, Plaintiff never complained to Shipcom that he had not received any required COBRA notice about his health insurance benefits. Plaintiff testified that he never thought about it.

9.    In October, 2015, however, and seven months after he resigned from Shipcom, Plaintiff along with others evidently pursued a Fair Labor Standards Act lawsuit against Shipcom, which claims are not a part of this lawsuit.  While working on his FLSA case, his FLSA counsel said something to Plaintiff that caused him to recall that he had not received an initial COBRA notice from

Shipcom or, after he resigned, a "qualifying-event" COBRA notice within 44 days following his resignation.

10.   Plaintiff's attorney by letter dated October 21, 2015, advised Shipcom's outside counsel (who evidently represented Shipcom in the FLSA case) that Plaintiff and possibly other former employees had not received the proper COBRA notice at the inception of their employment or at the end of their employment, either from Shipcom or its third party administrator, and Plaintiff's counsel threatened a class action lawsuit against Shipcom.

11.   This was the first notice of any kind received by Shipcom that Plaintiff had not received the required COBRA notices.   Up until this time, Shipcom believed in good faith that UnitedHealthcare had mailed to Plaintiff the required COBRA notice after Plaintiff's resignation.

12.   Upon receipt of the letter from Plaintiff's counsel, Shipcom launched an immediate investigation not only with respect to Plaintiff but also with respect to others who might be similarly situated.

13.   Shipcom's immediate investigation was headed by its legal counsel, Nakul Goenka, who himself had been hired in July 2014, during Shipcom's rapid ramp-up in size to perform the VA contract.

14.   Goenka's investigation was complicated by the fact that Shipcom had changed health insurance providers from UnitedHealthcare to Aetna effective April 1, 2015.   Thus,

4

Plaintiff's resignation was received during the final month of UnitedHealthcare's contract with Shipcom and when Aetna had been chosen as its successor.

15.    Goenka enlisted Shipcom's outside benefit analyzer group to assist in determining whether COBRA qualifying-event notices had been sent to Plaintiff (and others) by UnitedHealthcare during its final days as the COBRA administrator, or whether Aetna sent the notices when it became the insurance provider, or if some required notices had not been sent at all.

16.    Inquiries were made not only of the former provider, UnitedHealthcare, but also of Aetna.  Goenka himself was directly involved in inquiries made of Aetna's COBRA account representative, Judith Larby, regarding the several individuals in question to ascertain which plans each employee had been enrolled in, and whether each had received the required COBRA notices.

17.    The investigation discovered that the majority of the required COBRA notices had been delivered, but no record could be found to show that four employees, one of whom was Plaintiff, had received the required COBRA notices.

18.    Shipcom determined to send to Plaintiff and the other three like-situated former employees the required qualifying-event COBRA notices that they had not been provided on a timely basis, along with offers of special allowances to compensate for the delay.  As an added precaution against possible error, Shipcom

5

determined to send a second notice to former employees who already had received the appropriate COBRA qualifying-event notice.

19.   The notice to Plaintiff was mailed December 3, 2015 to the last address of record that he had provided to Shipcom.   The notice observed that his voluntary termination occurred on 03/13/2015; that his last day of health insurance coverage on his medical, dental, and vision plans was 03/31/2015; that he was entitled to continuing coverage until 02/01/2016; and that the monthly premium for his continued coverage under the plan he had chosen would be $392.35 for medical, $31.77 for dental, and $7.82 for vision.   In addition to the formal COBRA notice, Shipcom included a transmittal letter that expressly extended the benefit to enroll for COBRA retroactively and, as well, provided to Plaintiff the option to elect either the $1,000 deductible plan or the $2,000 deductible plan.   While Plaintiff was responsible for paying the future premiums for COBRA coverage, if he elected retroactive coverage Shipcom offered to work with him to come up with a payment schedule over time to allow Plaintiff better to manage his cashflow.   In addition, if he had incurred any medical expenses from the date of his loss of regular coverage until the date of reinstatement of the plan he could claim reimbursements on those medical expenses and bills under the plan.

20.   Goenka worked with Aetna's Larby to draft two transmittal letters, one for those whom the investigation showed had already

received their qualifying-event COBRA notices and who would now receive second notices, and the other transmittal letter to accompany the notice of COBRA rights upon a qualifying event that would be sent to Plaintiff and the three others for whom no record of a prior notice could be found. The first letter--intended for those who had already received notices--contained the following introductory paragraph:

> Your regular coverage under the Shipcom Wireless, Inc. Group Health Insurance Plan (the "Plan") has ended. We have already sent you a Notice of COBRA Rights upon Qualifying Event and related Election Form.

The second letter, to which Goenka himself gave editorial attention to assure accuracy, had the following introductory paragraph:

> Your regular coverage under the Shipcom Wireless, Inc. Group Health Insurance Plan (the "Plan") has ended. We understand you have not received a Notice of COBRA Rights upon Qualifying Event and related Election Form.

21.    Although Goenka directed that the latter transmittal letter be sent to Plaintiff, Aetna mistakenly mailed to Plaintiff the transmittal letter written for those receiving second notices.

22.    The transmittal letter and accompanying formal COBRA election notice were mailed to Plaintiff at his last known address, as found on the records of Shipcom's Human Resources Department.

Unbeknownst to Shipcom, Plaintiff had moved to a new address about three months before the letter was mailed, and Plaintiff did not receive the letter.  The record is silent on why the United States Postal Service did not forward the letter to Plaintiff's new address, and also is silent on whether Plaintiff had given to the United States Postal Service notice of his new address.  Not until January 16, 2016, did Plaintiff for the first time notify Shipcom of his new address in Los Angeles.

23.  Had Plaintiff received a timely qualifying-event COBRA notice within 44 days after his voluntary resignation from Shipcom on March 13, 2015, he would not have elected to accept and pay for any COBRA coverage with Shipcom's then insurer Aetna because he had become an employee of Cognizant two weeks after leaving Shipcom and had employer-furnished health, dental, and vision insurance provided to him under Cognizant's plan.

24.  From the date of his resignation on March 13 until he took his new employment with Cognizant two weeks later, Plaintiff had no medical, dental, or vision expenses or related damages during that brief gap in his employment.

25.  After receiving Shipcom's generous offer for retroactive health benefits coverage, an extended premium payment plan, and other concessions, Plaintiff implicitly rejected the offer by making no response to Shipcom.

26.   Plaintiff, a young man in apparent robust health, has had no loss or uninsured medical expenses at any time as a result of Shipcom's failure to send a timely qualifying-event COBRA notice.

27.   Likewise, Plaintiff sustained no actual loss, no harm, and no prejudice at any time as a result of Shipcom having failed to provide a timely initial notice and timely qualifying-event COBRA notice to Plaintiff.

28.   Shipcom's investigation led it to implement a new oversight system to track its employees to assure that all COBRA notices would be provided in accordance with law.  Shipcom regarded absolute compliance as very important, especially given that Shipcom is a federal government contractor.

29.   Nevertheless, Plaintiff seeks to impose upon Shipcom maximum statutory penalties of $110 per day, for 574 days, to the date estimated by Plaintiff that he should have received Shipcom's qualifying-event COBRA notice mailed on December 3, 2015.

30.   Plaintiff contends, as the basis for such penalties, that Shipcom did not act with good faith toward Plaintiff because its transmittal letter accompanying the December 3 COBRA notice stated, "We have already sent you a Notice of COBRA Rights upon Qualifying Event and related Election Form." (*See above* FOF 20, 21).

31.   Shipcom's Goenka, who conscientiously worked to achieve accuracy in the transmittal letter, credibly testified that he had edited the letter intended for Plaintiff to state correctly, "We

9

understand you have not received a Notice of COBRA Rights upon Qualifying-Event and related Election Form," and that by Aetna's unexplained mistake and notwithstanding Goenka's efforts, the letter composed for those who *had* received prior notices accompanied the COBRA notice mailed to Plaintiff.

32. Goenka, who testified and was cross-examined at trial, was direct, clear, and highly credible in his testimony on the facts pertaining to this issue. Goenka fully evidenced his and Shipcom's resolve to make amends and to assure that Plaintiff had no loss as a result of their mistake.

33. Shipcom acted in utmost good faith from the day it received the first threatening letter from Plaintiff's counsel asserting that Plaintiff had not received required COBRA notices. When Shipcom received the letter in late October, 2015, it initiated and timely conducted a thorough and careful investigation that involved two different healthcare insurance providers and its outside benefit analyzer group. The investigation found that required COBRA notices had been correctly sent to the great majority of former employees, but also identified four former employees to whom correct notices had not been mailed. It immediately sought to remedy that error by extending to those four (including Plaintiff) Shipcom's offers to cover all losses, to make available access to the Plan, and to provide an extended payment

plan for premiums so as to avoid undue burden upon the former employees' cashflow.

34.   Among the four to whom Shipcom sent its generous offers to remedy its mistake, only Plaintiff filed suit, even while admitting that he had no loss, uncovered medical expenses, or damages whatsoever.

## Conclusions of Law

**The Court makes the following conclusions of law:**

1.   The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this civil action arises under a law of the United States, namely, the Employee Retirement Income Security Act of 1974 ("ERISA").

2.   Plaintiff alleges claims against Defendant for failing to provide notice of continuation coverage as required by the Consolidated Budget Reconciliation Act of 1985 ("COBRA") both upon commencement of Plaintiff's coverage under Shipcom's Group Health Insurance Plan in violation of ERISA § 606(a)(1), 29 U.S.C. § 1166(a)(1), and upon Plaintiff's resignation, in violation of ERISA § 606(a)(4), 29 U.S.C. § 1166(a)(4).

3.   Shipcom was subject to COBRA at all times during 2014 and 2015.

4.   ERISA § 606(a)(1), 29 U.S.C. § 1166(a)(1), requires a group health plan, at the time of commencement of coverage under

11

the plan, to provide written notice to each covered employee and spouse of the employee (if any) of their rights under COBRA. Pursuant to 29 C.F.R. § 2590.606-1(a), the plan administrator is required to provide this notice.

5.   Defendant's failure to provide Plaintiff with an initial notice of his rights under COBRA in May 2014 was a violation of ERISA § 606(a)(1).

6.   ERISA § 606(a)(2), 29 U.S.C. § 1166(a)(2), requires an employer of an employee under a group health plan to notify the administrator of certain qualifying events described in 29 U.S.C. § 1163, within 30 days of the date of the qualifying event.

7.   ERISA § 606(a)(4), 29 U.S.C. § 1166(a)(4), requires an administrator of a group health plan, at the time of a qualifying event, to notify any qualified beneficiary of the beneficiary's right to elect COBRA coverage. ERISA § 606(c), 29 U.S.C. § 1166(c), requires that the notification must be made within 14 days of the date on which the administrator is notified of the qualifying event pursuant to ERISA § 606(a)(2).

8.   When, as here, an employer is also the administrator of the health plan, the employer must provide written notice of the availability of COBRA benefits within 44 days after the date of the qualifying event. <u>Miles-Hickman v. David Powers Homes, Inc.</u>, 589 F. Supp. 2d 849, 878 (S.D. Tex. 2008); 29 C.F.R. § 2590.606-4(b)(2).

9.    Qualifying events include "[t]he termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment."  29 U.S.C. § 1163(2).

10.   Plaintiff's resignation of his employment with Defendant effective March 13, 2015 was a qualifying event under COBRA.

11.   Defendant's failure timely to provide Plaintiff with the required COBRA notice within 44 days of Plaintiff's March 13, 2015 resignation was a violation of ERISA § 606(a)(4).

12.   Title 29 U.S.C. § 1132(c), as adjusted by 29 C.F.R. § 2575.502c-3, allows "in the court's discretion" the imposition of penalties up to $110 per day from the date of an administrator's failure or refusal to provide the COBRA notice required under ERISA § 606(a)(1) or (4).

13.   The penalty provision serves both as an incentive to plan administrators timely to provide information and also "to put plaintiffs in the same position they would have been absent the violations."  Miles-Hickman, 589 F. Supp. 2d at 880-81.

14.   In deciding whether to penalize an administrator with statutory penalties and, if so, in determining the size of the penalty to be imposed, it is appropriate for the Court to consider, among other factors, the prejudice, if any, suffered by the plan participant, the conduct of the administrator, the number of requests made for compliance, and the length of delay in responding.  Ferguson v. Vice-President of Human Res., No. CIV.A.

13

H-00-2104, 2001 WL 34070237, at *5 (S.D. Tex. Aug. 13, 2001) (Lake, J.) (citing Davis v. Featherstone, 97 F.3d 734, 738 (4th Cir. 1996); Ziaee v. Vest, 916 F.2d 1204, 1210-11 (7th Cir. 1990)); accord Miles-Hickman, 589 F. Supp. 2d at 880; see also Godwin v. Sun Life Assur. Co. of Canada, 980 F.2d 323, 327 (5th Cir. 1992) (observing that § 1132 does not require a showing of prejudice but affirming summary judgment denying statutory penalties based in part on lack of prejudice). "At bottom, the penalty is discretionary and fact-specific." Slipchenko v. Brunel Energy, Inc., No. CIV.A. H-11-1465, 2013 WL 4677918, at *17 (S.D. Tex. Aug. 30, 2013) (Rosenthal, J.) (denying summary judgment because "the present record is insufficient to decide whether statutory penalties are appropriate or in what amount").

15. Although a penalty may be awarded in the absence of either prejudice or bad faith by the employer, courts in the Fifth Circuit regularly decline to award statutory penalties in the absence of such aggravating factors. Miles-Hickman, 589 F. Supp. 2d at 879-81 (granting summary judgment for employer where plaintiff did nothing to ascertain her insurance status for six months after her employment termination and first requested information in a letter written by her lawyer, to which employer promptly responded with notice and offer of retroactive continuous insurance coverage) ("Hickman made conscious and possibly strategic decisions not to seek the coverage in January 2006 at a time when

14

the problem easily could have been addressed.  Hickman's decision was a not insignificant cause of the alleged prejudice from the violation.  The Court exercises its discretion to decline to award any penalty to Hickman for the COBRA notice violation in issue."); Sonnichsen v. Aries Marine Corp., 673 F. Supp. 2d 466, 473 (W.D. La. 2009) (granting employer's motion for summary judgment as to statutory penalties where plaintiff never contacted employer to arrange to continue his coverage nor paid any portion of the required employee premium contributions, employer subsequently provided notice of plaintiff's COBRA rights, and plaintiff after receiving letter chose not to continue coverage); *see also* Gomez v. St. Vincent Health, Inc., 649 F.3d 583, 591 (7th Cir. 2011) (affirming summary judgment denying statutory penalties where there was no evidence of bad faith by administrator or prejudice to plaintiff) (in cases with no evidence of bad faith, "evidence of the administrator's good faith (such as immediate corrective efforts when notification violations come to light and offers to negotiate payment plans for premiums to establish retroactive coverage) and of the lack of significant injury or prejudice caused by technical violations become more significant to the district court's analysis.  That is exactly the kind of analysis the district court engaged in here, and we find no error in its reasoning.").

16.   In contrast, where there is clear evidence of bad faith and prejudice, statutory penalties are appropriate.  *See* <u>Ferguson</u>, 2001 WL 34070237, at *5 (awarding maximum statutory penalty after bench trial where plaintiff went without health insurance while she was pregnant and incurring medical expenses, "did everything reasonably possible to obtain information about her rights under COBRA," and was never allowed to speak to a supervisor in her numerous calls to defendant, and where defendant repeatedly failed to change its records or send plaintiff a COBRA notification, even after she sent defendant a letter by certified mail chronicling her problems).

17.   Plaintiff suffered no legal injury, loss, or damages as a result of not having received from Shipcom the required ERISA notices.  (*See* FOF 23, 24, 25, 26, 27).

18.   Shipcom at all times acted in good faith with respect to its dealings with Plaintiff, including its efforts fully to make amends to Plaintiff after it learned that he had not received the required notices.  (*See* FOF 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 28, 31, 32, 33, 34).

19.   With no evidence of even the slightest bad faith on the part of Shipcom at any time material to this case, and with uncontroverted evidence that Plaintiff sustained no prejudice or loss whatever as a result of the notice mistakes made by Shipcom, the Court in the exercise of its discretion finds that statutory

penalties are not warranted and should not be imposed upon Shipcom pursuant to 29 U.S.C. § 1132(c).

20. Shipcom is entitled to judgment that Plaintiff take nothing and that Plaintiff's action be dismissed on the merits.

**If any of the foregoing Findings of Fact constitute Conclusions of Law, they are adopted as such; and if any of the foregoing Conclusions of Law constitute Findings of Fact, they are adopted as such.**

### Attorney's Fees

Under ERISA § 502(g)(1), "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Plaintiff requests an award of attorney's fees.

In exercising its discretion, the court considers five factors: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. <u>Wegner v. Standard Ins. Co.</u>, 129 F.3d 814, 821

(5th Cir. 1997).  "No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying section 502(g)."  Id. (quoting Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255, 1266 (5th Cir. 1980)).

The first factor weighs heavily in favor of denying attorney's fees to Plaintiff.  Shipcom acted at all times in good faith. Until it received the threatening letter from Plaintiff's lawyer in October 2015, Shipcom believed that Plaintiff had been provided the required COBRA notices by its outgoing insurance provider, UnitedHealthcare.  The month of March 2015, when Plaintiff resigned, was a time of burgeoning growth in Shipcom's workforce and of concomitant employee turnover.  Aetna was contracted to succeed UnitedHealthcare as the insurance provider when March ended, and UnitedHealthcare was in its waning days as Shipcom's insurer and COBRA agent.  Shipcom's prompt and comprehensive investigation identified a small minority of four employees who were not provided the required COBRA notices, one of whom was Plaintiff.  Defendant sought to make amends with each of the four, offering reimbursement of medical expenses incurred while uninsured, retroactive insurance coverage, and an extended payment plan for paying the COBRA premiums so as to ease any cashflow issues for the former employees.  Additionally, Shipcom implemented new monitoring practices to assure on a systemic basis that such

mistakes would not recur.  In every respect, Defendant demonstrated its good faith to comply with the law and make whole the Plaintiff for any loss sustained.  Plaintiff, on the other hand, knew of his COBRA rights but had no desire to pay the premiums for COBRA coverage from Shipcom when he seamlessly moved to a new job with Cognizant and received employer-provided medical, dental, and vision insurance coverage.  Plaintiff thus never asked Shipcom for a COBRA notice and conceded that he did not even think about his COBRA rights or about not having received a COBRA notice until prompted to do so by his lawyer whom he had retained on an unrelated matter.

No evidence was presented on the second factor with regard to Defendant's ability to satisfy an award of attorney's fees.

The third factor also weighs against an award of attorney's fees.  Under similar circumstances--where a mistake is made with respect to an individual employee or even, as Defendant disclosed, four employees--other employers should be *encouraged* to act in good faith as Shipcom did in conducting a full investigation to discover the facts, to make whole the affected former employees by making generous offers of recompense, and to implement improved procedures to prevent a recurrence of the mistake.  An award of attorney's fees against an employer who demonstrably does the right thing and whose mistake caused no harm would perversely incent the filing of meritless lawsuits simply for the attorney's fees.  Moreover, to

penalize a company that has caused no harm and in good faith strived to comply with the law is more likely to invite public contempt for our system of justice than to deter bad faith conduct by other employers.

The fourth factor again weighs against an award of attorney's fees in this action that was filed by one who suffered no harm and where no unresolved or significant legal question regarding ERISA was required to be adjudged.

The fifth factor, which requires consideration of the relative merits of the parties' positions, weighs heavily against an award of attorney's fees for Plaintiff. This is a case without a truly aggrieved plaintiff and without a defendant that acted in bad faith or caused harm to any person. Instead, upon receipt of the letter from Plaintiff's counsel and before the case was filed, Defendant Shipcom in utmost good faith investigated the facts, found and admitted its mistake, and offered full recompense not only to Plaintiff but to each other person who was found similarly situated. Shipcom adopted a new oversight system to assure that no person entitled to a COBRA notice would be overlooked in the future. Thus, by the end of the year 2015, Shipcom had completed a thorough investigation and taken all curative and corrective actions that could be expected. Fortunately, no harm had been done by the discovered mistakes, and Plaintiff himself admittedly had no loss or recoverable actual damages which, combined with

Shipcom's good faith throughout, was fully predictive that Plaintiff would also be denied statutory damages under Fifth Circuit precedents.

After carefully considering all Wegner factors, the Court finds that attorney's fees for Plaintiff should be denied.

## Afterthought on Professionalism

Abraham Lincoln, in his day as a preeminent lawyer in Illinois, was uncompromising in his criticism of lawyers who "stir up litigation."[1]   In our day Congress has given discretion to Courts in the interest of justice to award attorney's fees in certain ERISA cases.  This should not be read as a license to file suit on every technical violation of a federal statute that allows for possible recovery of statutory damages and/or attorney's fees. As seen above, Plaintiff here is not entitled to such recovery. Plaintiff had no loss and never thought of such a claim until prompted by his attorney (retained on an unrelated matter) who raised the issue.  What is disheartening is that this case was filed at all.  The *threat* of a lawsuit sent by Plaintiff's counsel proved more than enough to cause Defendant in good faith to

---

[1] "Never stir up litigation.  A worse man can scarcely be found than one who does this.  Who can be more nearly a fiend than he who habitually overhauls the register of deeds in search of defects in title, whereon to stir up strife, and put money in his pocket?  A moral tone ought to be infused into the profession which should drive such men out of it."  Abraham Lincoln, Fragment: Notes for Law Lecture, in THE LITERARY WORKS OF ABRAHAM LINCOLN, 56-57 (1942).

investigate, make generous amends, and institute corrective procedures. There is no reason to believe a simple telephone call would not have prompted Defendant to do the same. And then, four months later after Defendant had resolved all issues and all was in repose, Plaintiff filed this lawsuit. After a day in trial and thorough review of all the evidence, sadly, the case boils down to a claim only for fees for Plaintiff's attorney. In our day under the aegis of a federal statute it appears there are still lawyers who "stir up litigation." But this Judge believes that such would still incur Lincoln's emphatic disapprobation, which I believe would be well deserved.

**ORDER**

For the reasons set forth in the foregoing Findings of Fact and Conclusions of Law, it is

ORDERED that a Final Judgment shall be entered in favor of Defendant Shipcom that Plaintiff take nothing.

The Clerk shall notify all parties and provide them with a true copy of these Findings of Fact and Conclusions of Law.

SIGNED at Houston, Texas, on this 31st day of May, 2018.


EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE